IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBIN DEANNA SCARBROUGH** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:04CV119** |
| | § | |
| **CHEVRON U.S.A., INC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER**
<u>**GRANTING MOTION FOR SUMMARY JUDGMENT**</u>

BEFORE THE COURT is the Motion for Summary Judgment [16] filed by Defendant Chevron U.S.A., Inc. ("Chevron") seeking judgment on all claims brought by Plaintiff Robin Deanna Scarbrough ("Scarbrough") in this employment discrimination case. Scarbrough has filed her response, and Chevron its rebuttal. After due consideration of the submissions and the relevant law, it is the opinion of the Court that the Motion should be granted.

<u>FACTS AND PROCEDURAL HISTORY</u>

Plaintiff Scarbrough, a certified public accountant, worked in the Product Accounting Department of Chevron's Pascagoula, Mississippi refinery. Scarbrough was an excellent worker, receiving a promotion and a pay raise shortly before she resigned her position in June 2003. The physical area in which Scarbrough worked was referred to as the "bull pen." It was an open room filled with cubicles. Scarbrough found the environment to be noisy and distracting. Scarbrough contends that she suffered physical symptoms as a result of the noise and distractions in her work space, causing her to once hold her breath, inducing a panic attack.

She brought the noise issue and some "off-color" jokes by a male co-worker to the attention of her supervisors. Her supervisor, Paul Daniels, surveyed Plaintiff's work group, and

the majority voted in favor of leaving the "bull pen" as it was. A human resources employee investigated the "off-color" jokes, finding no merit to Plaintiff's complaint, as Plaintiff's co-workers did not find the jokes offensive. The male employee was nevertheless counseled about making jokes of that nature.

During an investigation into a dispute between two other co-workers, Plaintiff's supervisor questioned her about her possible involvement. He determined that she was not involved, and instructed her not to become involved in the future. Plaintiff was also questioned about materials she printed out on Company equipment. After explaining that she had printed out the materials from a disk and had not used the Company computer to download them from the internet, she was advised about compliance with the Company internet/equipment policy.

Shortly after the internet/equipment policy incident, Scarbrough decided to resign her position at Chevron. On Friday, June 6, 2003, she filled out a Voluntary Resignation form, citing "hostile work environment" as her reason for resigning. She noted an effective date of June 20, 2003 on the form. She did not return to her job, but used accrued vacation time for her final two weeks of employment.

On the following Thursday, June 12, 2003, Scarbrough phoned Chevron and attempted to rescind her resignation. Chevron informed her a few days later, on June 16, that it had no position for her at the company. Scarbrough filed a charge of discrimination with the EEOC about six months later. She alleged discharge or constructive discharge because of her sex, age, disability, a hostile work environment, and in retaliation for "reporting illegal discrimination." The charge was evaluated by the EEOC and dismissed. This lawsuit followed.

DISCUSSION

Plaintiff's Complaint sets out five Counts against the Defendant: 1) Sex Discrimination/Wrongful Termination; 2) Wrongful Discharge based upon "Defendant's regard for Plaintiff's disability;" 3) Wrongful Discharge in violation of the Family Medical Leave Act; 4) Emotional Distress, both negligent and intentional; and 5) Breach of Employment Contract and Breach of Duties of Good Faith and Fair Dealing. In addition, Plaintiff makes vague claims of retaliation and negligent hiring or retention.

**A.      Wrongful Discharge**

*The "Limitations" Period:*

Chevron first contends that it is entitled to dismissal of all of Plaintiff's claims because they were filed with the EEOC beyond the statutory 180 day period. *See* 42 U.S.C. § 2000e-5(e)(1). Although the filing of a timely charge with EEOC is not a jurisdictional prerequisite to a suit in federal court, it is a requirement like a statute of limitations, subject to waiver, estoppel, and equitable tolling. *See Cruce v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983). Thus, a plaintiff cannot sustain a claim under Title VII for events that occurred more than 180 days before the filing of the charge of discrimination. See *Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 537 (5th Cir. 1998).

Scarbrough filed her initial charge of discrimination on December 9, 2003. (Defendant's Exh. "B," Tab 9). Thus, she may only recover for conduct that occurred on or after June 12, 2003, 180 days before the filing of her charge. *See Cardiothoracic Surgery Assoc.,* 139 F.3d at 537.

In *Delaware State College v. Ricks*, 449 U.S. 250 (1980), the Supreme Court made it

clear that the filing period begins on the date when an employee is notified of a discharge, not on her last day of work or some other date. *Id*. at 258-59; *see also Chardon v. Fernandez*, 454 U.S. 6 (1981)(per curiam, reh'g denied, 454 U.S. 1166 (1982). "The operative date from which the 180-day filing period begins to run is 'the date of notice of termination.'" *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir. 1988)(quoting *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 563 (5th Cir. 1983)). The Court finds that in this case, the operative date was June 16, 2003, when Chevron considered Plaintiff's request to rescind her notice of resignation and notified her that it had rejected the request. Therefore, Plaintiff's claims regarding her constructive discharge on June 16, 2003 were timely filed with the EEOC. However, Plaintiff's remaining Title VII claims, including sexual harassment and retaliation, are barred.

<u>*Constructive Discharge:*</u>

Scarbrough contends that she was discriminated against when Chevron refused to allow her to rescind her resignation, constructively discharging her. Constructive discharge constitutes an adverse employment action for the purpose of demonstrating *a prima facie* case of discrimination. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341-42 (5th Cir. 2005). To prove constructive discharge, Scarbrough must offer evidence that Chevron deliberately made her working conditions so intolerable that a reasonable employee would feel compelled to resign. *Brown v. Bunge,* 207 F.3d 776, 782 (5th Cir. 2000); *Jurgens v. EEOC,* 903 F.2d 386, 390 (5th Cir. 1990). The issue is whether a reasonable person in the Plaintiff's shoes would have felt compelled to resign. *Barrow v. New Orleans Steamship Ass'n,* 10 F.3d 292, 297 n.19 (5th Cir. 1994). Whether a reasonable person would feel compelled to resign is fact intensive and courts consider the following factors, singly or in combination: (1) demotion; (2) reduction in salary; (3)

reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement, or continued employment on terms less favorable than the employee's former status. *Id.; Haley v. Alliance Compressor* LLC, 391 F.3d 644, 649-50 (5th Cir. 2004) (citations omitted). The Fifth Circuit has articulated that "constructive discharge claims can be regarded as an aggravated case of hostile work environment." *Vallecillo v. U.S. Dept. of Housing & Urban Dev.,* 2005 WL 3115080, *3 (5th Cir., Nov. 22, 2005). A constructive discharge requires a greater degree of harassment than a hostile work environment claim. *Kinney Shoe Corp.,* 237 at 566 (citing *Benningfield v. City of Houston,* 157 F.3d 369, 378 (5th Cir. 1998)). Of the factors above, the single one relevant to the circumstances of this case would be badgering, harassment or humiliation.

*Evidence of Badgering, Harassment or Humiliation:*

Plaintiff's claims could be read to allege that she was harassed into resigning by (1) Defendant's failure to alter the loud and disruptive "bullpen" as Plaintiff desired; (2) hearing a co-worker's "off-color" jokes on at least two occasions; (3) her supervisor's questioning about her possible involvement in a dispute between two other co-workers and instructing her not to become involved; and (4) being questioned about materials printed out on Company equipment and being advised that she must comply with the Company internet/equipment policy.[1]  In addition, Scarbrough claims that she was told that it was probably best for her to resign by the

---

[1] Although only the act of constructive discharge is within the statutory time period for a Title VII claim, the Court must still examine all the events that lead up to Scarbrough's resignation, even if those events are not individually actionable. *Chavera v. Victoria ISD*, 221 F.Supp.2d 741, 749 (S.D. Tex. 2002).

human resources employee who processed her resignation papers.

     Scarbrough complained to her supervisor, Paul Daniels, about the noise and traffic through the "bullpen" area. Defendant's Exhibit "B," Tab 2. She requested that a door or wall be built. Scarbrough testified that in response to her complaints, Daniels "brings everybody into the bullpen and says, okay, we're having a meeting. Deanna has complained about the noise. And that's how he starts the meeting. So what do y'all propose we do about it." Defendant's Exh. "A," pg. 122. Scarbrough objects to having been singled out as the person objecting to the noise level, but she does not provide any authority for her assumption that this was protected activity, or evidence that she was identified for some impermissible reason. Further, Plaintiff does not show any support in the case law for the proposition that Title VII entitles her to a quiet, disruption free work environment. Defendant, however, points to a Fifth Circuit case in which the court found that the conditions of working from a bullpen were insufficient to support a claim of constructive discharge. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342-43 (5th Cir. 2005). Plaintiff therefore fails to show that she can base a constructive discharge claim on her employer's failure to ameliorate a loud, disruptive working environment.

     Next, Plaintiff stated in her deposition that her co-worker, Don Sczymanski, "got a charge out of telling risque jokes." Defendant's Exh. A, pg. 95. Plaintiff does not remember specific complaints she made to Johnette Watson in the human resources department in May 2003, *id*., pgs. 121-27, but she "probably ... would have complained about Don's sexual jokes and that sort of thing." *Id*. at 126. Ms. Watson testified to a discussion in which Scarbrough "talked about ... Don Scymandski. And she said he made some inappropriate comments." Plaintiff's Exh. "A," pg. 15. Scarbrough said that Scymandski "told a joke about a cigar – Groucho Marx and a cigar,

and that he made a comment about someone's boob job." *Id.*  Scarbrough did not testify to relaying any other offensive comments to Watson.  Watson investigated by interviewing "most" of the people in the finance department.  *Id* at pg. 16.  She concluded that

> there was no merit to the fact that Mr. Scymandski was making inappropriate comments that were offensive to the entire work group.  I understood that it was offensive to Ms. Scarbrough, and Mr. Scymandski was counseled on that.

*Id*. at pg. 23.  Chevron's prompt and appropriate remedial action vitiates any Title VII claim based on these comments, *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794-95 (5th Cir. 1994), and they cannot support a hostile environment or constructive discharge claim.

Additionally, the fact that Scarbrough was questioned regarding her involvement in a dispute between two co-workers does not support a finding of a hostile environment.  In fact, after Plaintiff's supervisor spoke to her, he was satisfied that she was not involved in any wrongdoing and no further action was taken on the matter.  Defendant's Exh. "B," Tab 4.  This is a "mere criticism," which cannot constitute an adverse employment action.  *Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir. 1998) (quoting *Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1997)).

Nor is the fact that Scarbrough was questioned about materials she printed out on the Company's equipment evidence of an intolerable work environment.  Plaintiff's managers distributed the policy to all accounting employees and spoke to Scarbrough regarding what they believed to be a violation of the policy.  Distribution and uniform enforcement of a policy does not support a finding of constructive termination.  *See Keelan,* 407 F.3d at 342-43 (refusing to accept employee's position that a policy that applied across the board constitutes hostility or harassment).

Scarbrough also fails to present any evidence that she was advised or coerced to resign. Rather, Scarbrough testified that she submitted her resignation "crying and in an emotional state of distress," stating that she "couldn't take it anymore," at which point Johnette Watson responded "[i]t's probably for the best." Defendant's Exh. "A," pg. 152-53. According to Scarbrough's own testimony, this statement was only made after she indicated her intent to resign and could not have contributed to her decision.

There are additional factors which are not consistent with Plaintiff's claim of constructive discharge. The fact that Scarbrough attempted to rescind her resignation a week later indicates that she did not consider her working conditions to be so intolerable that she would not consider going back to work under those same conditions. *See Meisner v. State*, 2000 WL 1234662, *10 (N.D. Tex. 2000). Further, Scarbrough testified that at the time of her resignation, she had "just gotten a promotion and raised a grade level on the pay scale," Defendant's Exh. "B," pg. 155, which does not seem to be an efficient method for an employer to force out an unwanted employee.

In sum, Scarbrough has failed to provide any evidence to support her allegations that she was constructively discharged. Thus, Plaintiff voluntarily resigned her employment and did not suffer an adverse employment action. The Defendant is entitled to judgment as to Plaintiff's Title VII claim of constructive discharge.

**B.     Wrongful Discharge Based on Disability**

Under the Americans With Disabilities Act, an individual may have a viable claim that she was "regarded as" disabled if the individual:

1.     has an impairment which is not substantially limiting but which the employer

>
> perceives as constituting a substantially limiting impairment;
> 2. has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or
> 3. has no impairment at all but is regarded by the employer as having a substantially limiting impairment.

*Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir. 2003) (citing *Bridges v. City of Bossier*, 92 F.3d 329, 332)(5th Cir. 1996)); 42 U.S.C. §§ 12112(a) & 12102(2). Scarbrough states that she is not disabled, but argues that Chevron regarded her as hypersensitive, emotional and subject to panic attacks. Therefore, her situation falls under the third prong.

Under the "regarded as" disabled standard, a plaintiff is required to "produce sufficient summary judgment evidence to create an issue of fact that [Defendant] regarded [her] as having an impairment that substantially limited a major life activity, whether or not the impairment existed." *Hamilton v. Southwestern Bell Telephone Co.,* 136 F.3d 1047, 1051 (5th Cir. 1998).

Plaintiff has presented no evidence establishing that she has an impairment or that Chevron regarded her as having an impairment. Furthermore, Plaintiff testified that she does not have a disability and that no one at Chevron treated her as if she did:

Q: Do you have a disability?

A: I don't have a disability.

Q: Did anybody within the company consider that - even though you didn't have a disability, consider that you did?

A: I'm not completely sure of - I don't believe anyone considered me having a disability. I'm not aware that anyone thought that I had a disability. They may have. They may very well have.

Q: But as we sit here today, you're not aware of any facts that lead you to conclude that anyone thought you had a disability and you should be fired over it?

A: True.

Defendant's Exh. "A," pg. 141-42.

Plaintiff's lack of evidence to support her claim of disability discrimination entitles the Defendant to summary judgment.

**C.      Wrongful Discharge in Violation of the Family Medical Leave Act**

The Family and Medical Leave Act ("FMLA") gives employees an entitlement to take leave to care for a newborn or newly adopted child, for a close family member who has a "serious health condition" or for oneself if one has a "serious health condition." 29 U.S.C. § 2612(a)(1). The FMLA forbids an employer from interfering with the exercise of its employees' rights and from discriminating against employees who exercise those rights. 29 U.S.C. § 2615(a).

To establish a prima facie case of discrimination under the FMLA, a plaintiff must show: (1) that she is protected under the FMLA; (2) that she suffered an adverse employment action; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA, or (3b) that the adverse decision was made because of the plaintiff's request for leave. *Bocalbos v. Nation 'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).

Plaintiff testified that she never requested leave under the FMLA:

Q:    You never filed a request for a leave under the Family Medical Leave Act, did you? I'm not asking whether you thought about it or didn't think about it. I'm asking whether you ever filed one.

A:    I didn't file it.

Defendant's Exh. "A," pg. 147. Plaintiff has provided no evidence contradicting her own testimony disproving this fundamental element of her FMLA claim. Therefore, the Defendant is entitled to summary judgment on this claim.

**D.     Emotional Distress**

Scarbrough asserts state law claims of intentional infliction of emotional distress and, alternatively, negligent infliction of emotional distress.

*Intentional Infliction of Emotional Distress*:

Mississippi courts recognize intentional infliction of emotional distress claims when "the defendant's conduct ... evokes outrage or revulsion." *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss. 1981). The Fifth Circuit has held that in Mississippi:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 46, comment d).

The conduct complained of here, refusing to allow Scarbrough to rescind her resignation, cannot be described as "outrageous," "atrocious" or "utterly intolerable." "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Burroughs,* 28 F.3d at 549 (plaintiff's claims that she was "jittery, upset, unnerved, depressed, crying, emotional, mortified, terribly upset, bothered tremendously, and very badly hurt" held insufficient to support any damages for a claim of intentional infliction of emotional distress). The allegations must go beyond the "realm of an ordinary employment dispute." *Cooper v. Drexel Chemical Co.,* 949 F.Supp. 1275, 1284 (N.D. Miss. 1996); *MacArthur v. Univ. of Tex.*

-11-

*Hlth. Ctr.,* 45 F.3d 890, 899 (5th Cir. 1995)("In the employment context, a claim for intentional infliction of emotional distress will not be supported by the broad range of conduct labeled as 'mere employment disputes.'")(internal citations omitted); *See also Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 654-55 (5th Cir. 1994) ( "Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress"). Plaintiff's allegations describe mere employment disputes, not conduct so severe that no reasonable person could be expected to endure it. In the Court's opinion, no reasonable trier of fact could find that Chevron's conduct rose to that level. As a matter of law, therefore, Scarbrough's injuries cannot support her emotional distress claim.

*Negligent Infliction of Emotional Distress*:

Mississippi courts have repeatedly held that minor, subjective claims of serious anxiety cannot establish an emotional distress claim. *Adams v. U.S. Homecrafters, Inc.,* 744 So.2d 736, 743-44 (Miss. 1999). In *Strickland v. Rossini,* 589 So.2d 1268 (Miss. 1991), the Mississippi Supreme Court held that evidence that the plaintiff was "very depressed ⋯ [and] very upset over all this and emotional ⋯ [and] not able to sleep," was insufficient to sustain damages for mental anguish. *Strickland,* 589 So.2d at 1275-76. Under this standard, Scarbrough's symptoms of anxiety, shortness of breath and hyperventilating, are minor and subjective and do not establish emotional distress. The fact that Scarbrough's symptoms are alleged to have lasted for a year (the length of time she took medication) is not sufficient to state a claim for relief. *See Langston v. Bigelow,* 820 So.2d 752 (Miss.App. 2002) (finding insufficient grounds to recover for any infliction of emotional distress where the condition lasted for a year). It appears to the Court,

therefore that under Mississippi law, Scarbrough has failed to create a question of material fact for the jury on the issue of negligent infliction of emotional distress.

**E.		Breach of Employment Contract and Breach of Good Faith and Fair Dealing**:

Scarbrough asserts a state law claim for breach of contract based on an alleged employment contract.  Scarbrough asserts that her termination violated Chevron's personnel policies and procedures, resulting in a breach of Chevron's employment agreement with her as well as Chevron's underlying duty of good faith and fair dealing with respect to employment policies and/or contracts.

*Breach of Duty of Good Faith and Fair Dealing*:

The Mississippi Supreme Court has specifically held that at-will employment relationships are not governed by a covenant of good faith and fair dealing which gives rise to a cause of action for wrongful termination.  *Hartle v. Packard Elec.,* 626 So.2d 106, 110 (Miss.1993); *Perry v. Sears, Roebuck & Co.,* 508 So.2d 1086, 1089 (Miss.1987). More recently, the court reaffirmed its stance. *Young v. North Mississippi Medical Center*, 783 So.2d 661 (Miss. 2001).  This claim should be dismissed as a matter of law.

*Breach of Employment Contract* :

Under Mississippi law, an employment relationship may be terminated at will by either party "where there is no employment contract (or where there is a contract which does not specify the term of the worker's employment)." *Nuwer v. Mariner Post-Acute Network,* 332 F.3d 310, 314 (5th Cir. 2003), quoting *Perry v. Sears, Roebuck & Co.,* 508 So.2d 1086, 1088 (Miss. 1987).  To establish a contract of employment, a party must establish the length of the contract and the amount of the salary for the term.  *Id,* citing *Short v. Columbus Rubber and Gasket*

*Company, Inc.,* 535 So.2d 61, 64 (Miss. 1988).  Scarbrough testified that she was not aware of an employment contract, and she knew that Chevron did not guarantee employment.  Defendant's Exh. "A," pg. 109.  She has not provided any evidence of an employment contract with the Defendant.

Defendant has provided evidence of its written policy regarding termination of employment, where the right to terminate at-will is explicitly stated:

> Each employee has the right to and is free to terminate his or her employment with the company with or without cause or notice at anytime. Similarly, the company has the right to terminate an employee's employment and compensation with or without cause or notice at anytime.

Defendant's Exh. "B," Tab 7.  This document also states: "The company **cannot and does not guarantee employment or compensation** to any employee for a particular period of time or indefinitely." *Id.* (emphasis in original).  Where an employer explicitly informs the employee that its policies do not form a contract, the court will not impose contractual liability.  *Cooper,* 949 F.Supp at 1281; *Perry*, 508 So.2d. at 1088; *Hartle v. Packard Elec., a Div. of Gen. Motors Corp.* 626 So.2d 106 (Miss. 1993).  Because there is no evidence of an employment contract with Chevron, the Defendant is entitled to summary judgment on Plaintiff's claim of breach of contract.

F.  **Negligent Hiring/Retention:**

Plaintiff also makes allegations that Chevron "hired and/or retained manager and/or supervisors at its Pascagoula refinery and, therefore, knew or should have known that said agents lacked the knowledge, skills and/or abilities essential to performance in their respective roles requisite to assure that the policies published to employees would be followed, all resulting in Plaintiff's loss of employment and livelihood." Plaintiff's Complaint, pg. 5.

To prevail on these state law claims, Scarbrough must show that: (1) Chevron knew or should have known of some incompetence on the part of Scarbrough's managers; and (2) Chevron failed to do anything about it. *Raiola v. Chevron U.S.A., Inc.,* 872 So.2d 79 (Miss. Ct. App. 2004) (citing *Jones v. Toy, 476* So.2d 30, 31 (Miss. 1985)); *Patton v. Southern States Transp., Inc.* 932 F. Supp. 795, 801 (S.D. Miss. 1996), *aff'd,* 136 F.3d 1328 (1998); *Thatcher v. Brennan,* 657 F. Supp. 6, 10 (S.D. Miss. 1986), *aff'd,* 816 F.2d 675 (5th Cir. 1987).

Scarbrough not only fails to provide any evidence in support of these allegations, she also fails to identify what policy she alleges was not followed by her supervisors. Defendant is therefore entitled to summary judgment as to Plaintiff's claim of negligent hiring and/or retention.

## CONCLUSION

It is the Court's opinion that Scarbrough has failed to meet her summary judgment burden of setting forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986). The Defendant has shown that it is entitled to summary judgment as to each of Plaintiff's claims.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that the Defendant's Motion for Summary Judgment [16] is **GRANTED**. All claims of Plaintiff Robin Deanna Scarbrough against Defendant Chevron U.S.A., Inc. are **DISMISSED WITH PREJUDICE.**

**SO ORDERED AND ADJUDGED** this the 10th day of July 2006.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
U.S. DISTRICT JUDGE